UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE THE COMPLAINT AND PETITION OF BRIAN AND SUMMER COX AS OWNERS OF A 2001 SEA RAY PLEASURE VESSEL BEARING ID No. SERP5231B101, HER ENGINE, GEAR, TACKLE, APPURTENANCES, ETC., FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § CIVIL NO. 4:21-CV-172-SDJ<br><br>In Admiralty Pursuant to Rule 9(h) |

**MEMORANDUM OPINION AND ORDER**

This maritime limitation action arises from a fire that occurred at the Mill Creek Resort & Marina located on Lake Texoma. The fire began on a motor yacht vessel owned by Petitioners Brian Cox and Summer Cox and spread quickly from the Coxes' boat, damaging property belonging to BCB Marina Group d/b/a Mill Creek Resort & Marina ("Mill Creek Marina") along with the property of several other parties. As relevant here, Counterclaimants/Cross-Claimants Jay Stamper and Sandra Peak had a boat at Mill Creek Marina that was damaged in the fire and later declared a total loss. In addition, Stamper and Peak's "dockominium"[1] was also damaged by the fire, together with other property.[2]

---

[1] A "dockominium" is a residence built on the docks at the marina.

[2] Stamper and Peak have summarized their damages to include the loss of their yacht and its contents, as well as damage to their dockominium and its contents, together with additional items of property damaged or destroyed by the fire. *See* (Dkt. #114-1).

1

The Coxes filed the instant suit for exoneration or limitation of liability, civil and maritime, under the Limitation of Liability Act ("Limitation Act"), 46 U.S.C. § 30501 *et seq.*, and under Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. Stamper and Peak filed a counterclaim against the Coxes, as well as a cross-claim against Mill Creek Marina. Stamper and Peak's cross-claim against Mill Creek Marina seeks damages for, among other things, the loss of their real and personal property at the marina and loss of use and/or enjoyment of their property.

Before the Court is Mill Creek Marina's Motion for Partial Summary Judgment. (Dkt. #114). In the motion, Mill Creek Marina requests that Stamper and Peak's claim for loss-of-use damages for any property which was a total loss should be dismissed with prejudice under controlling maritime law. Stamper and Peak oppose the motion, challenging the application of admiralty jurisdiction and maritime law. Because the Court concludes that it has admiralty jurisdiction, and maritime law precludes the recovery of loss-of-use damages for property deemed a total loss, the motion will be granted.

## I. BACKGROUND

Mill Creek Marina is a full-service marina located on Lake Texoma near Pottsboro, Texas. In addition to certain land-based facilities, such as a convenience store, boat launch, boat dry storage, and cabins for rent, Mill Creek has twelve docks extending from shore over the water, with covered boat slips that may be leased, and living quarters on the second story over the dock—the so-called "dockominiums." The Coxes, as well as Stamper and Peak, leased slips at Mill Creek and kept vessels there.

2

Both also owned dockominiums. It is undisputed that the Cox Vessel[3] was the origin of a fire that ultimately consumed a number of boats and the structure of one of the docks at Mill Creek, including Stamper and Peak's boat and dockominium.

After the Coxes filed this Limitation Action, Stamper and Peak asserted both a counterclaim against the Coxes and a cross-claim against Mill Creek Marina. As to their counterclaim, Stamper and Peak have alleged, among other things, that the Cox Vessel was not maintained in a seaworthy condition and that the Coxes failed to properly maintain and inspect the Vessel, particularly in regard to its electrical system and other electrical gear. Stamper and Peak also maintain that the Cox Vessel lacked adequate alarms and warning systems. As a result of these and other alleged acts and omissions, Stamper and Peak assert that the Coxes are not entitled to exoneration from or limitation of liability under the Limitation Act. As to their cross-claim, Stamper and Peak contend that a contributing cause of the fire that began on the Cox Vessel was faulty or defective electrical service provided by Mill Creek Marina. Based on these allegations, Stamper and Peak seek damages from Mill Creek Marina for loss of their real and personal property at the marina, as well as loss of use of their property.[4]

---

[3] The Court will refer to the vessel at issue—a 2001 Sea Ray Sundancer 460 bearing the identification number SERP5231B101, and her engine, gear, tackle, and appurtenances—as the "Vessel" or "Cox Vessel."

[4] The Court notes that, although a number of claimants initially joined this action, all claims have now been settled except for Stamper and Peak's claims against the Coxes and Mill Creek Marina.

3

In its motion for partial summary judgment, Mill Creek Marina requests that the Court dismiss Stamper and Peak's claim for loss of use damages as to any property deemed a total loss because maritime law does not allow the award of such damages. Stamper and Peak contend that admiralty jurisdiction is absent and maritime law inapplicable because the fire on the Coxes boat was, at least in part, caused by negligent acts or omissions of Mill Creek Marina that occurred on land. According to Stamper and Peak, Texas law, which they contend broadly permits loss of use damages, should apply to their cross-claim against Mill Creek Marina.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under

4

the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 476 (citing *Anderson*, 477 U.S. at 248).

Courts consider the evidence in the light most favorable to the nonmovant, but the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by providing particular facts showing that there is a genuine issue for trial. *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## III. DISCUSSION

### A. The Court Has Admiralty Jurisdiction

Although Mill Creek Marina's partial-summary-judgment motion rests on the application of maritime-law doctrine concerning the availability of loss-of-use damages, the real fight here is whether admiralty jurisdiction and maritime law are properly invoked in the first place. Stamper and Peak maintain that admiralty jurisdiction is absent because a contributing cause of the fire that destroyed their property was Mill Creek Marina's land-based conduct and because they suffered land-based injuries, particularly damage to their dockominium.

Because Stamper and Peak's jurisdictional arguments are refuted by both statutory law and Supreme Court precedent, they necessarily fail. The Court concludes that admiralty jurisdiction has properly been invoked and maritime law applies.

1.

The Court's admiralty jurisdiction initially derives from the Constitution: "The judicial Power shall extend . . . to all Cases of admiralty and maritime jurisdiction." U.S. CONST. art. III, § 2. The modern statutory grant of admiralty jurisdiction is set forth in 28 U.S.C. Section 1333(1), which provides federal district courts "original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . ."

The traditional test for admiralty tort jurisdiction was the locality test, which asked only whether the tort occurred on navigable waters. "If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531–32, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). This test was complicated by the rule that the injury had to be "wholly" sustained on navigable waters for the tort to be within admiralty. *Id.* at 532 (citation omitted); *see also id.* ("Thus, admiralty courts lacked jurisdiction over, say, a claim following a ship's collision with a pier insofar as it injured the pier, for admiralty law treated the pier as an extension of the land.").

The rule changed in 1948 when Congress enacted the Extension of Admiralty Jurisdiction Act ("Extension Act"), which expanded maritime jurisdiction to injuries occurring on land or sea caused by a vessel on navigable water. *See* 46 U.S.C. § 30101.

"The purpose of the Act was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart*, 513 U.S. at 532.

Following this congressional modification, the Supreme Court issued a series of decisions clarifying the parameters of admiralty tort jurisdiction, culminating in *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*[5] As explained in *Grubart*, under the modern test federal admiralty jurisdiction under 28 U.S.C. § 1333(1) exists over a tort claim when conditions both of location and of connection with maritime activity are satisfied. 513 U.S. at 534. "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* The connection test is answered in two parts: the court first "assess[es] the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce;" and the court must then "determine whether the general character of the

---

[5] The trilogy of cases discussed in *Grubart* began with *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In *Executive Jet*, the Court held that "claims arising from airplane accidents are not cognizable in admiralty," notwithstanding the location of the harm, unless "the wrong bear[s] a significant relationship to traditional maritime activity." 409 U.S. at 268. The second case, *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), involved tort claims arising out of the collision of two pleasure boats in a navigable river estuary. The Court upheld admiralty jurisdiction, finding a sufficient connection with traditional maritime activity because of "[t]he potential disruptive impact [upon maritime commerce] of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation . . ." 457 U.S.at 675. The third case, *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), is discussed *infra* Part II.A.1–2.

activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal quotation marks and citations omitted).

The test set forth in *Grubart* was derived directly from the Court's prior opinion in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). Indeed, throughout *Grubart* the Court references the location and maritime-activity connection test for admiralty tort jurisdiction as the "*Sisson*" inquiry or test. *See Grubart*, 513 U.S. at 538 (referencing the first maritime connection inquiry, i.e., whether the incident at issue had the potential to disrupt maritime commerce, as "[t]he first *Sisson* test"); *see also id.* at 539 (referencing the second maritime-connection inquiry, i.e., "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity," as "the second *Sisson* enquiry"). Likewise, *Grubart* tracks *Sisson* concerning the proper application of the location and maritime-activity connection test. And, of particular importance here, *Sisson* presented a factual scenario that is strikingly similar to the circumstances giving rise to the instant action. In that case, the Court held that a federal admiralty court had jurisdiction over tort claims arising when a fire, caused by a defective washer/dryer aboard a pleasure boat docked at a marina, burned the boat, other boats docked nearby, and the marina itself. *Sisson*, 497 U.S. at 367.

### 2.

*Sisson* is directly applicable to this case and dispositive of the question of admiralty jurisdiction. Similar to *Sisson*, this case presents a maritime tort in which a fire began on board the Coxes' pleasure vessel and spread to other boats and a dock

8

at Mill Creek Marina on Lake Texoma, destroying boats and damaging other property, including Stamper and Peak's boat and dockominium. And, like *Sisson*, the location and maritime-activity connection tests for admiralty jurisdiction are satisfied.

To begin, the location element of the test from *Grubart* and *Sisson* is clearly met. Lake Texoma has been recognized to constitute the navigable waters of the United States. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). Thus, the fire on the Cox Vessel indisputably occurred on navigable waters.

The maritime-activity connection test is also met. As to the first part of the connection inquiry, which asks whether the general features of the type of incident involved could have a disruptive impact on maritime commerce, *Sisson* has answered the question in this exact circumstance. Specifically, *Sisson* holds that the burning of docked boats at a marina on navigable waters is an incident of a sort "likely to disrupt [maritime] commercial activity." 497 U.S. at 363; *see also Grubart*, 513 U.S. at 533–34 (same). *Sisson* also answers the second connection inquiry, which asks whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Sisson* confirmed that, "[c]learly, the storage and maintenance of a vessel at a marina on navigable waters is substantially related to traditional maritime activity." 497 U.S. at 367 (internal quotation marks omitted); *see also Grubart*, 513 U.S. at 534 (same). Because the location and

9

maritime-activity connection tests are satisfied, this Court has admiralty jurisdiction.

### 3.

Resisting the existence of admiralty jurisdiction, Stamper and Peak make two arguments. First, they contend that a "contributing cause" of the fire on the Coxes' boat was Mill Creek Marina's allegedly defective and faulty electrical service, which was provided largely by land-based equipment. Thus, according to Stamper and Peak, their allegations of fault against Mill Creek Marina are based, at least in part, on wrongful conduct that occurred on land, not over water. *See* (Dkt. #115). Second, Stamper and Peak state that their dockominium, which was consumed in the fire, is not a "vessel" under maritime law and therefore Stamper and Peak's damages associated with the dockominium should not be subject to maritime jurisdiction. *See* (Dkt. #115).

Stamper and Peak's arguments against admiralty jurisdiction are unavailing. Their first argument, which suggests that admiralty jurisdiction is absent because of Mill Creek Marina's status as a potential additional tortfeasor whose activities occurred on land, is foreclosed by *Grubart*. Stamper and Peak have asserted maritime tort claims against the Coxes, contending that the fire which began on their boat was the result of the Coxes' alleged failure to properly maintain and inspect their boat and their alleged failure to have adequate alarms and warning systems. Stamper and Peak's cross-claims asserted against Mill Creek Marina as a potential *additional* tortfeasor do not negate admiralty jurisdiction. The Supreme Court rejected exactly

10

this type of argument in *Grubart*, explaining that "[t]he substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the accident." 513 U.S. at 541. Here, even assuming *arguendo* that Mill Creek Marina's alleged conduct occurred on land, the conduct of the Coxes, the boat owners, "suppl[ies] the necessary substantial relationship to traditional maritime activity." *Id*.

Stamper and Peak's second argument against admiralty jurisdiction is equally flawed. In Stamper and Peak's view, their alleged land-based injury to their dockominium should not be subject to admiralty jurisdiction.[6] As the Supreme Court recognized in *Grubart*, this argument asks the Court to effectively change the current test for admiralty jurisdiction in cases "involving land-based parties and injuries." *Id.* at 543. But as is explained in *Grubart*, "Congress has already made the judgment, in the Extension Act, that a land-based victim may properly be subject to admiralty jurisdiction." *Id.* at 545. As *Grubart* recognized, the language of the Extension Act is unequivocal, providing that admiralty and maritime jurisdiction shall "extend[] to and include[] cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101. And it is undisputed that the fire that caused all of Stamper and Peak's alleged injuries began on the Coxes' boat, a vessel on navigable waters.

---

[6] Stamper and Peak maintain that their dockominium is not a "vessel" under maritime law. The Court need not decide this issue because, even assuming the dockominium is not a vessel, the Court has admiralty jurisdiction.

11

Under the circumstances, the law is clear that admiralty jurisdiction is not negated because some of Stamper and Peak's alleged damages may involve land-based injuries.

**B. Maritime Law Precludes Loss-of-Use Damages for Property Deemed a Total Loss.**

With admiralty jurisdiction comes the application of substantive admiralty law. *See Executive Jet Aviation*, 409 U.S. at 255; *East River S. S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). "Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." *East River S. S. Corp.*, 476 U.S. at 864. The general maritime law has been aptly described by the Supreme Court as "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Id.* at 864–65 (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 373–375, 79 S.Ct. 468, 480–481, 3 L.Ed.2d 368 (1959)).

Mill Creek Marina asks the Court to apply the principle of maritime law that loss-of-use damages may not be awarded for property that is a total loss. As the Fifth Circuit has explained, "[i]t is fundamental that when a vessel is lost or damaged the owner is entitled to its money equivalent, and thereby to be put in as good a position pecuniarily as if his property had not been destroyed.*" King Fisher Marine Service, Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1185 (5th Cir. 1984) (internal quotation marks and citation omitted). "The generally established rule is that in a case of total loss the owner is not compensated for the loss of use of the boat." *Id.* at 1187 (citing *A & S*

12

*Transp. Co. v. The Tug Fajardo*, 688 F.2d 1, 2–3 (1st Cir. 1982)). Rather, "[t]he owner is made whole by receiving the value of the boat at the time of its loss and interest compensates for the owner's time value of money." *Id.*

For their part, Stamper and Peak do not contest this principle of maritime law. Instead, their argument that Texas law applies turns solely on the contention that admiralty jurisdiction does not exist. The Court has rejected that argument. *See supra* Part III.A.[7]

The Court concludes that, under controlling maritime law, loss-of-use damages may not be awarded for Stamper and Peak's vessel, which has been deemed a total loss. Further, under the Extension Act this principle of maritime law applies to any of Stamper and Peak's property that is deemed a total loss because any such injuries were "caused by a vessel on navigable waters." 46 U.S.C. § 30101; *see also Grubart*, 513 U.S. at 545 (explaining that under the Extension Act a victim of land-based injuries may properly be subject to admiralty jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, Mill Creek Marina's Motion for Partial Summary Judgment, (Dkt. #114), is **GRANTED**. Any claim by Counterclaimants/Cross-Claimants Jay Stamper and Sandra Peak for loss-of-use damages as to property deemed a total loss is **DISMISSED with prejudice**.

---

[7] The Court does not reach the issue of whether Stamper and Peak could recover for loss of use under Texas law since it does not apply.

**So ORDERED and SIGNED this 20th day of March, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE